FILED
U.S. DISTRICT COURT
2015 AUG 19 P 4:51
DISTRICT OF UTAH
BY: ________
DEPUTY CLERK

JOHN W. HUBER, United States Attorney (#7226)
JASON R. BURT, Assistant United States Attorney (#11200)
AMANDA A. BERNDT, Assistant United States Attorney (#15370)
Attorneys for the United States of America
185 South State Street, Ste. 300 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682 • Facsimile: (801) 325-3387

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE LEMAR PALMER, and JULIEANN PALMER MARTIN,<br><br>Defendants. | **INDICTMENT**<br><br>VIOLATIONS:<br><br>18 U.S.C. § 1343 (Wire Fraud)<br>Counts 1-14<br>18 U.S.C. § 1341 (Mail Fraud)<br>Counts 15-31<br>18 U.S.C. § 1957 (Money Laundering)<br>Counts 32-48 |

Case: 2:15-cr-00469
Assigned To : Parrish, Jill N.
Assign. Date : 8/19/2015
Description: USA v.

The Grand Jury charges:

At all times relevant to this Indictment:

**BACKGROUND**

1. Defendant WAYNE LEMAR PALMER ("PALMER") was a resident of Salt Lake County, Utah. PALMER established National Note of Utah ("NNU") on or about December 30, 1992. PALMER owned and operated NNU at all times during its existence. PALMER made all business decisions for NNU, including decisions regarding the use of investor funds. PALMER was signatory on most, if not all, of NNU's bank accounts.

2. JULIEANN PALMER MARTIN ("MARTIN") was a resident of Salt Lake County, Utah. MARTIN began working at NNU in or about 1993. Among other duties at NNU,

MARTIN functioned as a "Client Relations Manager," which allowed her to interact with many of NNU's investors and gave her access to information about the investors' investments with NNU.

3. NNU was located in West Jordan, Utah. NNU solicited and sold investments, generally in the form of fixed rate promissory notes at a rate of 12% per annum. NNU purported to be in the business of purchasing existing real estate loans and funding new real estate loans. NNU supposedly used investor funds to purchase discounted mortgage notes and deeds of trust and to originate real estate loans at above-market rates. NNU engaged in a variety of other business activities during its existence in an effort to generate revenue, including among other things, acquiring and operating rental properties, developing properties it obtained through foreclosure, purchasing real estate for development, buying and operating a mint, and seeking to extract precious metals from previously processed mine tailings.

**THE SCHEME AND ARTIFICE TO DEFRAUD**

4. Beginning in or about January 2007 until on or about June 25, 2012, in the Central Division of the District of Utah and elsewhere, PALMER devised and intended to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations, and promises. In execution of the scheme to defraud, PALMER used or caused to be used interstate wire transmissions and the facilities and means of interstate commerce, and mail or private or commercial interstate carrier.

5. Beginning in or about January 2010 until on or about June 25, 2012, in the Central Division of the District of Utah and elsewhere, MARTIN knowingly and intentionally joined PALMER's scheme and artifice to defraud and for obtaining money by means of false and

fraudulent pretenses, representations, and promises. In execution of the scheme to defraud, MARTIN used or caused to be used interstate wire transmissions and the facilities and means of interstate commerce, and mail or private or commercial interstate carrier.

**Overview**

6. From in or about January 2007 through on or about June 25, 2012, PALMER and MARTIN defrauded investors of NNU of millions of dollars through a series of false and materially misleading statements to investors which focused primarily on the profitability of NNU, the safety of the investment, and the guarantee and/or promise of a 12% per annum return. In truth and in fact, as PALMER at all times during the scheme knew and as MARTIN knew from in or about January 2010, these statements were false and misleading.

**NNU's Business**

7. It was part of the scheme and artifice to defraud that, in addition to NNU, PALMER caused numerous affiliated entities to be created which he directly or indirectly controlled. In general, NNU conducted its business activities (described above in Paragraph 3) through these affiliates. NNU raised money from investors and then purported to loan this money to the affiliates charging an interest rate to the affiliates higher than the 12% per annum rate PALMER and MARTIN typically promised investors. At all times during the scheme, PALMER exercised control over NNU, the affiliates, and the accounting records. MARTIN also exercised control over accounting records.

8. It was further part of the scheme and artifice to defraud that beginning in or around 2004, the majority of loans NNU made were to its own affiliates. From in or around 2004 on, the amount of money PALMER and MARTIN raised from investors greatly expanded,

and the amount of money PALMER loaned to his affiliates likewise greatly expanded. By in or around 2009, over 90% of the amount NNU was due from its loans was from the affiliates.

9. It was further part of the scheme and artifice to defraud that beginning in or around 2007, the affiliates in the aggregate did not generate sufficient revenue to produce a positive return to NNU, let alone a greater than 12% annual return. Indeed, during the period of the scheme, NNU and its affiliates in the aggregate never had net income or positive net equity which it could use to pay the full amount owed to investors. As a result PALMER at times used new investor money to make payments owed to other investors.

10. It was further part of the scheme and artifice to defraud that PALMER and MARTIN continued to solicit investors after NNU largely stopped making payments to investors in or around September 2011.

**PALMER and MARTIN Recruit and Retain Investors Using Materially False, Fraudulent, and Misleading Statements**

11. It was further part of the scheme and artifice to defraud that beginning in or around January 2007 and continuing through on or about June 25, 2012, PALMER and MARTIN recruited individuals and entities to invest in NNU. PALMER travelled around the country to meet potential investors at seminars and trainings he attended and/or conducted. At times, PALMER solicited investors through one or more commission-based salespeople and obtained referrals from existing customers. MARTIN solicited potential investors and spoke with existing investors over the phone and in-person at NNU's offices. MARTIN also had contact with investors through email communications. When PALMER was absent, MARTIN

was the primary contact person at NNU for investors. For some investors, MARTIN was their only contact with NNU.

12. It was further part of the scheme and artifice to defraud that at times PALMER and MARTIN provided prospective investors with an NNU marketing brochure advertising the NNU program. In this brochure, PALMER falsely claimed, among other things, that NNU always produced a 12% per annum return for its investors and that NNU had a "perfect payment record." PALMER also "guaranteed": "double digit returns" with "no worries about reductions in earnings"; "monthly payments"; "safety of principle"; and "no fees or hidden costs." Palmer further claimed that "behind each of these loans or liens is a quality piece of real property" which had equity that "assures the payment of the mortgage or lien, even if the borrower fails to pay."

13. It was further part of the scheme and artifice to defraud that PALMER and MARTIN solicited investors to invest in NNU knowingly using materially false and fraudulent statements, which included, among others:

- The investment was safe and guaranteed;
- NNU was profitable and generated sufficient income from its business operations to pay investors a 12% per annum return;
- NNU's business activities were generating 18% or more per year returns;
- Investments in NNU were secured by real estate assets which exceeded NNU's investor liabilities;
- NNU had a perfect payment record and had never been late on a single investor payment; and
- NNU did not pay commissions or payment for selling efforts to its employees or others for soliciting investments.

14. It was further part of the scheme and artifice to defraud that PALMER and MARTIN omitted telling NNU investors certain material facts about NNU relating to their investments, including, among others:

- New investor funds often were being used to repay older investors' return of principal and interest payments, to pay the operating expenses of NNU, and to pay the personal expenses of PALMER;
- The vast majority of NNU investments were with affiliated entities PALMER controlled, rather than arms-length investments with third parties;
- Beginning in or around 2007, NNU and its affiliates had, on aggregate, reported net losses and negative equity every year;
- NNU and its affiliates in the aggregate had insufficient operating revenues to pay investors and operating expenses;
- NNU had failed to return some investors' principal after investors' request upon note maturity; and
- NNU's notes receivables from entities not affiliated with NNU and PALMER were uncollectable and in default.

15. It was further part of the scheme and artifice to defraud that based on PALMER's and MARTIN's materially false and misleading statements and their omissions of material fact, investors provided funds in exchange for promissory notes with NNU.

16. Between 1995 and 2012, PALMER and MARTIN raised over $140 million from over 600 investors. Many investors lost all or part of their money invested in NNU. Some of the investors utilized self-directed retirement funds to make their investments. Some of the investors are referred to in the individual counts in this Indictment charging the defendants with violations of federal mail fraud and wire fraud statutes.

17. It was further part of the scheme and artifice to defraud that when investors complained about late or missing payments, PALMER and MARTIN typically did not disclose the true state of affairs at NNU but told investors to be patient and that payments would be forthcoming.

18. It was further part of the scheme and artifice to defraud that investors were provided promissory notes with specific maturity dates, typically one or two years from the date of the note. Investors were allowed the option to renew their notes upon maturity, which tended to lull investors into a false sense of NNU's continued success. If NNU did not receive specific instructions from investors how they desired NNU to handle the maturity of their note, NNU routinely renewed the notes for a new term and sent investors renewal notices. PALMER and MARTIN typically did not disclose the true state of NNU's affairs to investors upon renewal of investors' notes. By at least 2011, PALMER was denying requests from some investors who had specifically requested that their notes be paid out in full at maturity.

**COUNTS 1-14**
**18 U.S.C. § 1343**
**(Wire Fraud)**

19. The Grand Jury incorporates Paragraphs 1-18 and realleges them herein by reference as though fully set forth in these counts of the Indictment.

20. On or about the dates listed in each count below, in the Central Division of the District of Utah, and elsewhere, the Defendants listed for each count below, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property from investors by means of materially false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing said scheme and artifice to defraud,

caused the following items to be transmitted by means of wire communication in interstate commerce described below for each count, each transmission constituting a separate count:

| COUNT | DEFENDANT | DATE (on or about) | WIRE COMMUNICATION |
|---|---|---|---|
| 1 | WAYNE PALMER | 04/06/2011 | Bank wire transfer of $330,000 from investor D.M.'s M.E.I. account at First Interstate Bank of Billing in Wyoming, account number XXXXX1683, to NNU's J.P. Morgan Chase Bank in Utah account number XXXXX3907. |
| 2 | WAYNE PALMER and JULIEANN MARTIN | 10/13/2011 | Fax of initialed promissory note from investor G.O. in Indiana to NNU in Utah |
| 3 | WAYNE PALMER | 05/19/2011 | Bank wire transfer of $350,000 from investor D.S.'s account at Wachovia Bank NA of Florida, account number XXXXX0021, to NNU's J.P. Morgan Chase Bank account in Utah, account number XXXXX3907. |
| 4 | WAYNE PALMER | 01/12/2011 | Bank wire transfer of $40,000 from investor J.S.'s account at Wells Fargo Bank in Pennsylvania, account number XXXXX1467, to NNU's J.P. Morgan Chase Bank account in Utah, account number XXXXX3907. |
| 5 | WAYNE PALMER and JULIEANN MARTIN | 01/11/2011 | Email of monthly investor statement from NNU in Utah to victim L.G. of Utah transmitted through California |
| 6 | WAYNE PALMER and JULIEANN MARTIN | 04/08/2011 | Email of monthly investor statements from NNU in Utah to victim L.G of Utah transmitted through California |


| | | | |
|---|---|---|---|
| 7 | WAYNE PALMER and JULIEANN MARTIN | 10/25/2011 | Bank wire transfer of $86,000 from investor H.F.'s Entrust Group Inc. account at Union Bank of California, in California account number XXXXX0496, to NNU's J.P. Morgan Chase Bank account in Utah, account number XXXXX3907. |
| 8 | WAYNE PALMER and JULIEANN MARTIN | 09/21/2011 | Email from MARTIN in Utah and investors P.B and B.G. in Washington regarding wire transfer instructions |
| 9 | WAYNE PALMER and JULIEANN MARTIN | 09/28/2011 | Email from MARTIN in Utah and investors P.B. and B.G. in Washington containing the promissory note to be signed |
| 10 | WAYNE PALMER and JULIEANN MARTIN | 04/29/2011 | Bank wire transfer of $250,000 from L.C.'s account at Bank of America in Florida, account number XXXXXX9593, to NNU's J.P. Morgan Chase Bank account in Utah account number XXXXX3907. |
| 11 | WAYNE PALMER and JULIEANN MARTIN | 10/28/2011 | Bank wire transfer of $299,982 from investor F.T.H.T.'s account at Royal Bank of Canada in Canada, account number XXX4251, to NNU's J.P. Morgan Chase Bank account in Utah, account number XXXXX3907. |
| 12 | WAYNE PALMER and JULIEANN MARTIN | 10/31/2011 | Bank wire transfer of $199,982 from investor F.T.H.T's account at Royal Bank of Canada in Canada, account number XXX4251, to NNU's J.P. Morgan Chase Bank account in Utah, account number XXXXX3907. |
| 13 | WAYNE PALMER and JULIEANN MARTIN | 05/09/12 | Email from MARTIN in Utah and investor R.S. and M.S. in Utah over interstate wires containing "Payment History" |

| | | | |
|---|---|---|---|
| 14 | WAYNE PALMER and JULIEANN MARTIN | 02/10/2012 | Email from Wayne Palmer to Investors T.H. confirming receipt of investment check for E.W., check #417 for $100,000. |

All in violation of Title 18, United States Code, Sections 1343 and 2(a).

**COUNTS 15-31**
**18 U.S.C. § 1341**
**(Mail Fraud)**

21. The Grand Jury incorporates Paragraphs 1-20 and realleges them herein by reference as though fully set forth in these counts of the Indictment.

22. On or about the dates listed in each count below, in the Central Division of the District of Utah, and elsewhere, the Defendants listed for each count below, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property from investors by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing said scheme and artifice to defraud, knowingly placed and caused to be placed in any post office and authorized depository for mail matter, and knowingly counseled, commanded, induced, procured, and caused to be delivered by mail and by private and commercial interstate carrier, certain matters and things to be delivered according to the directions thereon, as more particularly described for each count below.

| COUNT | DEFENDANT | DATE (on or about) | DESCRIPTION OF MAILING |
|---|---|---|---|
| 15 | WAYNE PALMER and JULIEANN MARTIN | 1/1/2012 | Investor R.C. of Georgia mailed check #3556 for $35,000 from Georgia to NNU in Utah via the United States Postal Service |
| 16 | WAYNE PALMER and JULIEANN MARTIN | 08/1/2011 | Investor R.C. of Georgia mailed check #3507 for $35,500 from Georgia to NNU in Utah via the United States Postal Service |

| | | | |
|---|---|---|---|
| 17 | WAYNE PALMER and JULIEANN MARTIN | 03/14/2012 | NNU in Utah mailed check #56556 for $9,000 from NNU in Utah to investor C.C. in California via the United States Postal Service |
| 18 | WAYNE PALMER and JULIEANN MARTIN | 10/01/2011 | NNU in Utah mailed check #54473 for $19,059 from NNU in Utah to investor C.C. in California via the United States Postal Service |
| 19 | WAYNE PALMER and JULIEANN MARTIN | 11/02/2011 | NNU in Utah mailed check #53561 for $1,000 from NNU in Utah to investor D.M. in Wyoming via the United States Postal Service |
| 20 | WAYNE PALMER | 05/01/2011 | NNU in Utah mailed check #50827 for $500 from NNU in Utah to investor P.S. in Utah via the United States Postal Service |
| 21 | WAYNE PALMER and JULIEANN MARTIN | 08/01/2011 | NNU in Utah mailed check #52952 for $500 from NNU in Utah to investor P.S. in Utah via the United States Postal Service |
| 22 | WAYNE PALMER and JULIEANN MARTIN | 08/11/2011 | Investor D.S. of Florida mailed check #3678 for $75,000 from Florida to NNU in Utah via the United States Postal Service |
| 23 | WAYNE PALMER | 12/01/2010 | NNU in Utah mailed check #47032 for $128,305.48 from NNU in Utah to investor J.S. in Pennsylvania via the United States Postal Service |
| 24 | WAYNE PALMER | 09/01/2010 | NNU in Utah mailed check #45026 for $69,690.96 from NNU in Utah to investor J.S. in Pennsylvania via the United States Postal Service |
| 25 | WAYNE PALMER | 04/27/2011 | Investor C.M. of Nevada mailed check #1117 for $500,000 from Nevada to NNU in Utah via the United States Postal Service |

| | | | |
|---|---|---|---|
| 26 | WAYNE PALMER | 03/01/2011 | NNU in Utah mailed check #49365 for $4,277.38 from NNU in Utah to investor C.M. in Nevada via the United States Postal Service |
| 27 | WAYNE PALMER and JULIEANN MARTIN | 10/18/2011 | NNU in Utah mailed check #53407 for $500.00 to investor B.F.'s account at Bankan & Company, LLC c/o Bank of Kansas, in Kansas via the United States Postal Service. |
| 28 | WAYNE PALMER and JULIEANN MARTIN | 8/01/2011 | NNU in Utah mailed check #52689 for $500.00 to investor B.F.'s account at Bankan & Company, LLC c/o Bank of Kansas, in Kansas via the United States Postal Service. |
| 29 | WAYNE PALMER | 04/01/2011 | NNU in Utah mailed check #49922 for $2,100 from NNU in Utah to investor M.H. in Nevada via the United States Postal Service |
| 30 | WAYNE PALMER | 05/01/2011 | NNU in Utah mailed check #50609 for $2,100 from NNU in Utah to investor M.H. in Nevada via the United States Postal Service |
| 31 | WAYNE PALMER | 08/30/2010 | Investor D.G. of Utah mailed check #2223 for $700 from Utah to NNU in Utah via the United States Postal Service. |

All in violation of Title 18, United States Code, Sections 1341 and 2(a).

**COUNTS 32-48**
**Money Laundering**
**(18 U.S.C. § 1957)**

23. The Grand Jury incorporates Paragraphs 1-22 and realleges them herein by reference as though fully set forth in these counts of the Indictment.

24. On or about the dates listed in each count below, within the Central Division of the District of Utah and elsewhere.

**WAYNE PALMER, and**
**JULIEANN MARTIN**

Defendants herein, did knowingly engage and attempt to engage in, and aided and abetted, counseled, commanded, induced, and procured, the following monetary transactions, by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer, deposit, or withdrawal of funds or monetary instruments, such property having been derived from a specified unlawful activity, that is, Mail Fraud in violation of 18 U.S.C. § 1341, and Wire Fraud, in violation of 18 U.S.C. § 1343.

| **COUNT** | **DATE** (on or about) | **SUA TRANSACTION ACCOUNT** | **TYPE** | **AMOUNT** | **RECEIVING ACCOUNT & NOTE** |
|---|---|---|---|---|---|
| 32 | 01/12/2011 | NNU Chase Bank Account #3907 | Check #5318 | $28,000 | Vision Land, LLC or National Note of Utah, LC Deposited into WF Acct #5954 Memo: ADVANCE |
| 33 | 04/07/2011 | NNU Chase Bank Account #3907 | Check #5411 | $290,000 | National Note of Utah, LC Deposited into WF Acct #5954 Memo: ADVANCE |
| 34 | 04/29/2011 | NNU Chase Bank Account #3907 | Check #5424 | $400,000 | National Note of Utah, LC Deposited into WF Acct #5954 Memo: ADVANCE HD1, HD2, HFC |

| | | | | | |
|---|---|---|---|---|---|
| 35 | 05/02/2011 | NNU Chase Bank Account #3907 | Wire Transfer | $18,000 | Star Pointe Development, LLC |
| 36 | 05/02/2011 | NNU Chase Bank Account #3907 | Wire Transfer | $12,891.72 | Backbone Ventures LLC Attn: Nirvana DE Weever |
| 37 | 05/02/2011 | NNU Chase Bank Account #3907 | Check #5426 | $12,407.91 | First National Bank Memo: ACCT ******1750 |
| 38 | 05/03/2011 | NNU Chase Bank Account #3907 | Check #5425 | $50,000 | ITC Sheila Allred Memo: 53268 |
| 39 | 05/03/2011 | NNU Chase Bank Account #3907 | Check #5430 | $25,000 | David Loftus Memo: Return of Principal |
| 40 | 05/03/2011 | NNU Chase Bank Account #3907 | Check #5432 | $23,500 | Homeland Funding Corp Deposited into WF Acct #5954 Memo: Payroll 4/20/2011 & 5/5/11 |
| 41 | 05/03/2011 | NNU Chase Bank Account #3907 | Check #5427 | $19,336 | Thompson, Ostler & Olsen Memo: HH, BM, AO, HM, & HSB |
| 42 | 05/04/2011 | NNU Chase Bank Account #3907 | Check #5434 | $481,000 | National Note of Utah, L.C. Deposited into WF Acct #5954 Memo: HFC, NPL, PUP, EB, HD1 |
| 43 | 05/04/2011 | NNU Chase Bank Account #3907 | Wire Transfer | $50,486.30 | Barclay Associates LLC Union LA |

| | | | | | |
|---|---|---|---|---|---|
| 44 | 05/20/2011 | NNU Chase Bank Account #3907 | Check #5461 | $100,000 | Riverbend Estates, LC or National Note of Utah, LC Memo: ADVANCE |
| 45 | 05/20/2011 | NNU Chase Bank Account #3907 | Check #5462 | $100,000 | Riverbend Estates, LC or National Note of Utah, LC Memo: ADVANCE |
| 46 | 10/28/2011 | NNU Chase Bank Account #3907 | Check #5573 | $100,000 | National Note of Utah, LC Deposited into WF Acct #5954 |
| 47 | 10/31/2011 | NNU Chase Bank Account #3907 | Check #5579 | $36,000 | Expressway Business Park, LLC Deposited into KeyBank Acct #1902 (Expressway Business Park, LLC) Memo: ADVANCE |
| 48 | 10/31/2011 | NNU Chase Bank Account #3907 | Check #5583 | $224,000 | Riverbend Estates, LC or National Note of Utah, LC Deposited into WF Acct #5954 Memo: ADVANCE |

All in violation of Title 18, United States Code, Sections 1957(a) and 2(a), (b).

**NOTICE OF INTENT TO SEEK FORFEITURE**

The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461.

**MAIL FRAUD, WIRE FRAUD**

Upon conviction of any offense(s) in violation of 18 U.S.C. § 1343 or 18 U.S.C. § 1341, as set forth in this Indictment, the defendants WAYNE LEMAR PALMER and JULIEANN PALMER MARTIN, shall forfeit to the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(C), and 28 U.S.C. § 2461, any and all property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

The property to be forfeited includes, but is not limited to the following:

- Money Judgment: A sum of money, in United States currency, representing the amount involved in the scheme to defraud, and/or traceable thereto, as charged in the Indictment, for which the defendants are jointly and severally liable.

**MONEY LAUNDERING**

Upon conviction of any offense(s) in violation of 18 U.S.C. § 1957, as set forth in this Indictment, the defendants WAYNE LEMAR PALMER and JULIEANN PALMER MARTIN, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), any and all property, real or personal, involved in such offense, or any property traceable to such property. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

The property to be forfeited includes, but is not limited to the following:

- Money Judgment: A sum of money, in United States currency, representing the amount involved in each offense and/or traceable thereto, as charged in the Indictment, for which the defendants are jointly and severally liable.

**SUBSTITUTE ASSETS**

If any of the property described above, as a result of any act or omission of the defendant(s):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

A TRUE BILL:

/S/
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

JASON R. BURT
AMANDA A. BERNDT
Assistant United States Attorneys